UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OFFICIAL COMMITTEE OF EQUITY SECURITIES
HOLDERS,

                        Appellant,          Case # 23-CV-6350-FPG

v.                                                         DECISION AND ORDER

INTEGRATED NANO-TECHNOLOGIES, INC., et al.,

                        Appellees.
_____

OFFICIAL COMMITTEE OF EQUITY SECURITIES
HOLDERS,

                        Appellant,          Case # 23-CV-6351-FPG

v.                                                         DECISION AND ORDER

INTEGRATED NANO-TECHNOLOGIES, INC., et al.,

                        Appellees.
_____

## INTRODUCTION

These related appeals arise from the Chapter 11 bankruptcy case of debtor Integrated Nano-Technologies, Inc. ("INT"). In June 2023, the Honorable Paul R. Warren, Bankruptcy Judge, dismissed the bankruptcy case due to INT's failure to obtain counsel. As a result, the bankruptcy court concluded that the Official Committee of Equity Securities Holders ("the Official Committee") was "automatically dissolved." The bankruptcy court denied as moot the Official Committee's application to retain the law firm of McCarter & English, LLP. In Case No. 23-CV-6350, the Official Committee appeals the dismissal of the case. In Case No. 23-CV-6351, it appeals the denial of its application to retain McCarter & English. For the reasons that follow, the bankruptcy court's decisions are VACATED and REMAND for further proceedings.

1

## BACKGROUND[1]

Donald H. Noble—Chief Financial Officer of INT—filed a voluntary Chapter 11 petition on INT's behalf in December 2022. ECF No. 1 at 5. INT moved to employ Barclay Damon LLP as its counsel, ECF Nos. 11, 44, and to obtain post-petition financing from Enplas America, Inc. ("Enplas")—INT's largest creditor and largest single shareholder, ECF No. 1-5 at 1; ECF No. 1-8 at 2; ECF No. 6. The bankruptcy court granted the motion for post-petition financing on an interim basis on January 6, 2023. ECF No. 48. As is relevant here, the order gave Enplas a secured, first priority security interest in "all existing and hereafter acquired property of [INT] and [INT's] estate." *Id.* at 2. On January 25, 2023, the bankruptcy court approved the proposed bidding procedures for the sale of INT's assets. ECF No. 64. At a January 26, 2023 hearing, the bankruptcy court approved the post-petition financing on a final basis, in light of certain modifications requested by the U.S. Trustee and Dennis Michael Connolly—a secured creditor and former CEO of INT. *See* ECF No. 242 at 16-17; ECF No. 243; *see also* ECF No. 79.

In late February 2023, McCarter & English appeared on behalf of an ad hoc group of seven INT shareholders. ECF Nos. 91, 92. Pursuant to Bankruptcy Rule 2004, the ad hoc group moved for an order authorizing the examinations of, and production of documents from, INT, Connolly, and Ragu Raman—the latter being INT's president and CEO until shortly before INT's bankruptcy. ECF No. 93. The ad hoc's group underlying concern was that the bankruptcy proceedings had been concocted by INT and Enplas in order to benefit Enplas at the expense of other shareholders. The ad hoc group explained that INT had been developing its proprietary technology for over twenty years and was just recently "on the verge of finally bringing a finished product to market." *Id.* at 4. In Fall 2022, INT sought additional investments so that the product could be commercialized. The ad hoc group alleged, however, that Enplas used its position of

---

[1] In this section, the Court's citations to the record refer to the docket in the bankruptcy proceedings, *In re Integrated Nano-Technologies, LLC*, No. 2-22-20611-PRW (Bankr. W.D.N.Y.).

control to reject the "proposed terms for additional investments from other shareholders and, instead, set [INT] on a path to file bankruptcy, with the endgame being Enplas' acquisition of all of [INT's] assets, reaping all of the value to be generated by the commercialization of [INT's] technology, and wiping out any return for other existing equity interests." *Id.* The ad hoc group sought to investigate these issues via Rule 2004. The bankruptcy court granted the ad hoc group's request on March 9, 2023. ECF No. 244.

On March 21, 2023, INT, Enplas, and Connolly moved to approve a settlement of Connolly's secured loan. The U.S. Trustee and the ad hoc group objected to the settlement, ECF Nos. 118, 119, and the bankruptcy court sustained those objections, denying the motion without prejudice, ECF No. 245. In particular, the bankruptcy court shared the ad hoc group's concern regarding the scope of the agreed-upon waiver of potential claims. *Id.* at 7.

On April 13, 2023, the U.S. Trustee appointed an official committee of equity securities holders (*i.e.*, the Official Committee). ECF No. 125. On April 24, 2023, INT notified the bankruptcy court that the only bidder for its assets was Enplas. *See* ECF No. 133. INT moved for an order authorizing the sale of its assets to Enplas. ECF No. 144. The U.S. Trustee objected to the motion, noting that the bid process required minimum bids of $10 million, despite the fact a minimum bid "was not authorized by [the] Court pursuant to the Bidding Procedures Order" and INT did not "request the Court to authorize such a minimum bid." ECF No. 146 at 5. The U.S. Trustee objected to the motion because, among other things, the minimum bid "undoubtedly chilled the competitive bidding process and predetermined the outcome of the sale to Enplas." *Id.* The Official Committee objected to the motion on similar grounds. ECF No. 148. It also proffered evidence that Enplas had exerted substantial control over INT prior to the bankruptcy, and had used the bankruptcy proceedings as a means to obtain "INT's assets free and clear and reorganize

3

the company for its own benefit and to the detriment of other creditors and shareholders." ECF No. 148 at 15.

On May 18, 2023, the bankruptcy court held a hearing. It resolved two matters. First, it addressed the U.S. Trustee's objection to INT's motion to retain Barclay Damon LLP as counsel. Over the course of the bankruptcy proceedings, information had come to light that two Barclay Damon partners had interests in INT, and another attorney who was "of counsel" at Barclay Damon was also formerly an officer at INT. *See generally* ECF No. 140. The bankruptcy court concluded that, because Barclay Damon had "inadequately disclosed" its potential interests in INT, it was disqualified from representing INT. ECF No. 246 at 5-6. The bankruptcy court directed INT to retain new counsel by May 23, 2023. *See id.* at 6-7. He warned INT that he intended to "sua sponte dismiss th[is] case" if it failed to do so. *Id.* at 7. Second, the bankruptcy court sustained the objections to the sale and the bidding process. *Id.* at 14. He declared the "entire process" a "nullity." *Id.*

On June 1, 2023, the U.S. Trustee moved, pursuant to 11 U.S.C. § 1112(b)(1), to convert or dismiss the bankruptcy proceeding because INT had failed to obtain counsel. ECF No. 197. The U.S. Trustee advocated for conversion: because "there may be assets that can be liquidated and claims to be investigated, the United States Trustee recommend[ed] that the case be converted to a case under chapter 7." *Id.* at 9. The Official Committee responded that an appointment of a trustee under Chapter 11 was the proper course of action under Section 1112(b)(1). *See* ECF No. 210. It believed that INT's operations could still be restructured to provide a "viable path" forward. *Id.* at 2-3. In the alternative, the Official Committee requested dismissal of the action, provided that the bankruptcy court retain jurisdiction to adjudicate potential issues with the post-petition financing order, the recovery of funds held by Barclay Damon, and the application to retain McCarter & English. *See id.* at 4-5.

4

On June 8, 2023, the bankruptcy court granted the motion of the U.S. Trustee. ECF No. 237. He found cause for conversion or dismissal under Section 1112(b)(1) given INT's failure to obtain new counsel. He found no countervailing unusual circumstances under Section 1112(b)(2). *Id.* at 6. The bankruptcy court concluded that dismissal, not conversion, was in the best interests of creditors and the estate. Enplas was the largest unsecured creditor, such that conversion of the case to Chapter 7 would put the U.S. Trustee in the position of "recovering assets . . . for the benefit of Enplas." *Id.* "The absence of other unsecured creditors with meaningful claims" led the bankruptcy court to conclude that conversion to Chapter 7 would not be in the best interest of creditors or the estate. *Id.* The bankruptcy court declined to consider the Official Committee's suggestion that a Chapter 11 trustee be appointed. *Id.* at 8. In its view, the Official Committee was required to request that relief via separate motion. *Id.* Because the Official Committee raised it merely in response to the U.S. Trustee's motion, the request was "procedurally improper" and would "simply not be considered by the Court." *Id.*

The bankruptcy court also declined to consider the Official Committee's request to retain jurisdiction over certain matters in the event of dismissal. It reasoned that, because the case was to be dismissed, the Official Committee would be deemed to be "automatically dissolved." *Id.* at 9. As a result, it would have no capacity to pursue those additional matters after dismissal of the Chapter 11 case, including its request to retain McCarter & English. *Id.* In other words, the Official Committee's request to retain McCarter & English was moot. *Id.* at 10. In the alternative, the bankruptcy court concluded that McCarter & English's proposed hourly rates were unreasonable. The Official Committee appealed the dismissal of the Chapter 11 case and the denial of its application to retain McCarter & English. ECF Nos. 224, 226.

## STANDARD OF REVIEW

"Bankruptcy court decisions are subject to appellate review in the first instance by the district court." *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 387 (2d Cir. 2018). "[T]he district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *Allen v. Charter Commc'ns, Inc.* (*In re Charter Commc'ns, Inc.*), 691 F.3d 476, 483 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013). The district court may "affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." *Morgan v. Gordon*, 450 B.R. 402, 405 (W.D.N.Y. 2011).

## DISCUSSION[2]

The Official Committee challenges the bankruptcy court's decisions to (1) dismiss the case and (2) disapprove its application to employ McCarter & English. The Court takes up each issue below.

### I. Dismissal of the Bankruptcy Case

The Official Committee argues that the bankruptcy court erred when it declined to consider appointment of a Chapter 11 trustee on the ground the Official Committee had failed to file a separate motion. *See* ECF No. 46 at 26-27. The U.S. Trustee takes no position on the Official Committee's appeal, ECF No. 48 at 19, and Enplas opposes it. ECF No. 47 at 7-8. The Court agrees with the Official Committee.

Section 1112(b)(1) provides:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

---

[2] In this section, the Court's citations to the record refer to the docket in Case No. 23-CV-6351.

11 U.S.C. § 1112(b)(1).  In other words, once there is a finding of "cause," the bankruptcy court is presented with "three alternatives": it may "dismiss the case, convert the case to one under Chapter 7, or appoint a Chapter 11 trustee, whichever results in the best interest of creditors." *Keven A. McKenna, P.C. v. Off. Comm. of Unsecured Creditors*, No. 10-CV-472, 2011 WL 2214763, at *2 (D.R.I. May 31, 2011); *see also Farnsworth v. Mosel* (*In re Farnsworth*), No. 08-086, 2009 WL 8466786, at *8 (B.A.P. 1st Cir. 2009) ("If the bankruptcy court finds that 'cause' existed, the court must then find that dismissal, rather than conversion *or appointment of a chapter 11 trustee*, was in the best interest of creditors." (emphasis added)).  Because the statute mandates the appointment of a Chapter 11 trustee—and precludes dismissal or conversion—when it is in "the best interests of creditors and the estate," 11 U.S.C. § 1112(b)(1); *In re Blixseth*, No. 09-60452-11, 2009 WL 1525994, at *4 (Bank. D. Mont. May 29, 2009), the bankruptcy court has an "independent obligation" to consider appointment of a trustee regardless of whether a party moves for such relief.  *Benzeen Inc. v. U.S. Trustee* (*In re Benzeen Inc.*), No. 18-1185, 2019 WL 1096334, at *5 (B.A.P. 9th Cir. Mar. 6, 2019); *see also In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) ("The plain language of Section 1112(b)(1) provides that the court *must* consider whether appointment of a Chapter 11 trustee would be in the best interests of creditors and the estate." (emphasis added)).  Consequently, a bankruptcy court abuses its discretion when it fails to consider "which of these three [alternatives] is in the best interest of the creditors and estate." *Kingsway Cap. Partners, LLC v. Sosa*, 549 B.R. 897, 906 (N.D. Cal. 2016); *see also Sullivan v. Harnisch* (*In re Sullivan*), 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014).

In this case, the bankruptcy court expressly declined to consider whether appointment of a Chapter 11 trustee would be in the best interests of creditors and the estate.  *See* ECF No. 237 at 8 (stating that the Official Committee's proposal for "appointment of a Chapter 11 Trustee . . . will simply not be considered by the Court").  Contrary to the bankruptcy court's conclusion, Section

1112(b)(1) required it to conduct that analysis before it could dismiss or convert the case. 11 U.S.C. § 1112(b)(1). The bankruptcy court was not permitted to limit its analysis to only those alternatives suggested by the movant (the U.S. Trustee), *see Sullivan*, 522 B.R. at 613 (rejecting the bankruptcy court's view that its "limited task was to grant or deny the relief requested by [the movants]—dismissal"), or to require the Official Committee to file a separate motion before considering appointment of a Chapter 11 trustee, *see Starmark*, 388 B.R. at 736 (noting that "[t]he court's obligation to consider [whether appointment of a Chapter 11 trustee is warranted] is independent of [a litigant's] motion to appoint a trustee").

The bankruptcy court justified this omission on the ground that Rule 2007.1(a) requires that "a motion for an order to appoint a trustee . . . under § 1004(a) . . . be made in accordance with Rule 9014." Bankr. R. 2007.1(a); *see also* ECF No. 237 at 8; Bankr. R. 9014(a) ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."). As the Official Committee correctly notes, however, the plain terms of Rule 2007.1 "do[] not require a separate motion for the appointment of a trustee where such appointment arises . . . under § 1112(b)(1)." ECF No. 46 at 29. That is, Rule 2007.1 addresses affirmative requests for appointment under § 1104(a), not the independent analysis a bankruptcy court is required to undertake in assessing whether to dismiss, convert, or appoint under Section 1112(b)(1).

In short, the bankruptcy court erred when it dismissed the matter without determining whether appointment of a Chapter 11 trustee was in the "best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). The bankruptcy court's order dismissing the Chapter 11 case is vacated and remanded for further proceedings. On remand, the bankruptcy court shall consider the record evidence submitted by all parties in interest—including the Official Committee—shall hold an evidentiary hearing, if necessary, and shall make all factual findings and conclusions of law

necessary to determine whether dismissal, conversion, or appointment of a trustee is in the best interests of creditors and the estate, as required by Section 1112(b)(1).[3]

## II. Retention of McCarter & English, LLP

The Court likewise agrees that the bankruptcy court erroneously denied the Official Committee's application to employ McCarter & English. *See* ECF No. 46 at 33-34. The bankruptcy court offered two reasons for the denial.

First, the bankruptcy court found the application moot insofar as the dismissal of the bankruptcy case resulted in the automatic dissolution of the Official Committee. ECF No. 237 at 10. As the Court previously held, "automatic dissolution" does not occur immediately upon dismissal. *See generally* ECF No. 36. Therefore, this rationale is not grounds for finding the application moot.

Second, the bankruptcy court suggested that McCarter & English's proposed hourly rates were excessive as compared to "rates customarily charged by experienced counsel practicing before this Court." ECF No. 237 at 10. The bankruptcy court's oral decision and written order omit any indication of what it believed a fair customary rate to be. This inhibits the Court's review of the decision. *See Heredia v. Preuss* (*In re Heredia*), No. 23-CV-403, 2024 WL 691331, at *5 (S.D.N.Y. Feb. 20, 2024) ("[W]here the record does not reflect the reasoning for the bankruptcy court's decision, the Court may remand for further proceedings." (internal quotation marks omitted)). Moreover, the bankruptcy court found the proposed hourly rates unreasonable in part because of the "size and relative lack of complexity" of the case. ECF No. 237 at 10. To be sure,

---

[3] The Court takes no position on whether dismissal, conversion, or appointment is in the best interests of creditors and the estate. Nevertheless, it should be noted that this case involved several arguably irregular circumstances: while its counsel potentially labored under conflicts of interest, INT agreed to a post-petition financing agreement that was highly favorable to Enplas; there were defective bidding procedures in connection with the auction that Enplas won; and INT refused to obtain new counsel, which had the effect of ending the bankruptcy case while allowing Enplas to retain the benefit of the favorable post-petition financing agreement. Whether the Official Committee's theory of unfair collusion between INT and Enplas is ultimately borne out by the record, and whether any such collusion bears on the appropriate course of action to take under Section 1112(b)(1), are matters left to the bankruptcy court's sound discretion on remand.

9

the case was resolved in short order—but that was the result of the bankruptcy court's own decision to terminate the case via a summary dismissal. Because it is unclear whether and to what degree the bankruptcy court's substantive error influenced its perception of the case—and, thereby, its view of the reasonableness of McCarter & English's proposed hourly rates—remand is warranted to allow the bankruptcy court to assess the application in light of the further proceedings that will be undertaken.

## CONCLUSION

In Case No. 23-CV-6350, the bankruptcy court's order granting the U.S. Trustee's motion to dismiss the case is VACATED and REMANDED for further proceedings. In Case No. 23-CV-6351, the order disapproving the Official Committee's application to employ McCarter & English is VACATED and REMANDED for further proceedings. The Clerk of Court is directed to close the cases.

IT IS SO ORDERED.

Dated: August 19, 2024
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York